John R. Hansen and Shirley G. Hansen v. Commissioner.
Hansen v. Commissioner
Docket No. 62041.
United States Tax Court
T.C. Memo 1957-113; 1957 Tax Ct. Memo LEXIS 131; 16 T.C.M. (CCH) 471; T.C.M. (RIA) 57113; June 28, 1957
*131 Emmett E. McInnis, Jr., Esq., Northern Life Tower, Seattle, Wash., for the petitioners. John H. Welch, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax and additions to tax: Additions to Tax
Taxable
Sec. 294
Sec.
Year
Deficiency
(d)(1)(A)
294(d)(2)
1951
$1,092.66
$847.66
$565.10
1952
686.40
563.51
375.67
1953
5,124.24
703.91
469.26
The issues for decision are (1) whether petitioner, an automobile dealer reporting on an accrual method of accounting, must include in income amounts retained in a reserve account by General Motors Acceptance Corporation, and (2) whether the Commissioner properly determined additions to tax both under sections 294(d)(1)(A) and 294(d)(2) for failure to file declarations of estimated tax and substantial underestimation of tax. Findings of Fact Some of the facts are stipulated and the stipulation and pertinent exhibits are made part hereof by reference. Petitioners are husband and wife residing at Bellevue, Washington. They timely filed joint income tax returns for the years *132 1951, 1952, and 1953 with the collector of internal revenue at Tacoma, Washington. Petitioner John R. Hansen (herein called petitioner) was a Buick automobile dealer engaged in the business of selling automobiles at retail. Petitioner sold automobiles under conditional sales contracts providing for payment of the purchase price in installments, using a form of contract provided by the General Motors Acceptance Corporation, (hereinafter referred to as GMAC). This contract called for a "Total Time Price" for the automobile sold. This price was computed by subtracting the down payment including the trade-in, if any, from the "Cash Sale Delivered Price" and adding to this difference the cost of any insurance and finance charges. Thus an amount was arrived at called the "Time (Deferred) Balance." The down payment was added back to the latter amount to fix the "Total Time Price." The form contract included the following endorsement, which was executed by petitioner upon assignment of the contract to GMAC: "For value received, undersigned does hereby sell, assign and transfer to the General Motors Acceptance Corporation his, its or their right, title and interest in and to the within *133 contract, herewith submitted for purchase by it, and the property covered thereby and authorizes said General Motors Acceptance Corporation to do every act and thing necessary to collect and discharge the same. "The undersigned certifies that said contract arose from the sale of the within described property, warranting that title to said property was at time of sale and is now vested in the undersigned free of all liens and encumbrances; that said property is as represented to the purchaser of said property by the undersigned and that statements made by the purchaser of said property on the statement from attached hereto are true to the best of the knowledge and belief of the undersigned. "In consideration of your purchase of the within contract, undersigned guarantees payment of the full amount remaining unpaid hereon, and covenants if default be made in payment of any installment herein to pay the full amount then unpaid to General Motors Acceptance Corporation upon demand, except as otherwise provided by the terms of the present General Motors Acceptance Corporation Retail Plan. Liability of the undersigned shall not be affected by any indulgence, compromise, settlement, extensions *134 or variation of terms of the within contract effected with, or by the discharge or release of the obligation of the purchaser or any other person interested, by operation of law or otherwise. Undersigned waives notice of acceptance of this guaranty and notices of non-payment and non-performance." Petitioner financed all of his conditional sales during 1951, 1952, and 1953 through GMAC. He assigned his contracts pursuant to the terms of the endorsement contained thereon, in exchange for the amount set forth in the contract, but reduced by an amount withheld and placed in a reserve account. There was no specific contract with GMAC requiring petitioner to assign any of his contracts to GMAC. Petitioner was not required to assign any of his contracts to GMAC or to any other finance company and could hold such contracts himself without assignment. A reserve account was maintained between petitioner and GMAC under which at least 5 per cent of the outstanding balances of the contracts assigned to GMAC were retained by it. This reserve was maintained in order to protect GMAC against any loss arising from the repossession of any automobile in case of default in payment. Also, in the event *135 of prepayment by a customer, the proportionate reduction in finance charges was charged to the reserve. Petitioner's books of account and income tax returns were maintained and filed on an accrual method of accounting. Petitioner had opening and closing inventories and accounts receivable. He charged off bad debts specifically as they became worthless. In reporting income from his automobile business and in maintaining his accounts, petitioner debited the amount placed in the reserve to an account entitled "Due Finance Company" and credited an account entitled "Reserve for Repossession." In their income tax returns for 1951 and 1953 petitioners did not include in income the amounts withheld by GMAC. These amounts were placed in the reserve account. [1]
Petitioners reported the amounts retained in the reserve account as income in the years when it was paid to them by GMAC. Petitioners *136 did not file a declaration of estimated tax for any of the years in controversy. Ultimate Conclusions The amounts retained in the reserve account and not reported by petitioners are a part of their gross income in the years when the amounts were placed in the reserve account. The failure to file declarations of estimated tax was not due to reasonable cause. The additions to tax determined pursuant to section 294(d)(1)(A) and 294(d)(2) were properly determined by the Commissioner. Opinion The principles which require petitioners to include in income the amounts placed in the reserve account in the years in which such amounts were placed in the reserve account have been thoroughly explained in ; ; and . In those cases this Court has fully and carefully reconsidered its position on this question in the light of , on which petitioners strongly rely, and, despite our respect for the Court of Appeals for the Fourth Circuit, we have declined to follow its decision in the Johnson case *137 which reversed this Court's decision, . Accordingly, on the reserve account issue, we sustain the Commissioner. On the issue of the propriety of determining additions to tax for failure to file declarations of estimated tax, we quote petitioners' argument: "Were the failures to file due to reasonable cause and not to willful neglect? The evidence shows that petitioner John R. Hansen is a business man rather than an accountant or tax expert or attorney. He was responsible for important decisions for his automobile dealership. He had to promote the sale of new and used cars; to appraise used cars and to approve all trade-ins; to hire and deal with employees; to supervise the repair and service departments and the auto parts department; and to direct his advertising and public relations. "The evidence further shows that petitioner Shirley G. Hansen, during the same years, was fully occupied in caring for the home and the children of petitioners. "As a result, petitioners delegated their bookkeeping and tax problems to others, during the tax years at issue. The testimony shows that the bookkeeping was done by a girl and by a bookkeeper who came over once *138 a week. Petitioner John R. Hansen had a brother-in-law make out his income tax all the time. Those persons and petitioners were unaware of the statutory requirement of filing declaration of estimated tax. "In a regular and consistent system of accounting and tax payment, the taxpayers filed their final returns for each of the three years in issue, and paid their tax in full as they had calculated it. The final 1040 return for each year was such as to indicate clearly to a tax expert that estimated returns should have been filed. This consistent and patent mistake was never corrected. A telephone call or a form letter from the Internal Revenue office would have enabled the taxpayers to avoid further violations. For the entire three years the taxpayers believed in good faith that they were doing all that was required of them, by filing their timely annual returns and paying their taxes each year. "Petitioners first learned that they were obliged to file declarations of estimated tax, in 1954, when they secured the services of a professional tax accountant * * *. Not until 1954 did the Internal Revenue Service call to petitioners' attention their failure to file declarations of estimated *139 tax for the three preceding years. "Petitioners submit that their consistent filing of annual returns without knowing or being notified that estimated returns should have been filed, was reasonable cause for their failure to file estimated returns." We think these arguments are self defeating. Petitioners have failed to show that their failure to file declarations of estimated tax was "due to reasonable cause and not to willful neglect." On this issue, we uphold the Commissioner's determination. The last issue concerns the propriety of the Commissioner's determination of additions to tax for "substantial underestimation." Petitioners recognize that this Court * has consistently approved the action of the Commissioner in determining additions to tax in the same case, both for failure to file a declaration of estimated tax and for substantial underestimation. , affd. on another issue, (C.A. 10) ; ; ; Harold C. Marbut, 28 T.C. - (Filed June 24, 1957). On the authority of the cited cases we uphold the Commissioner on this issue. Because *140 of other adjustments a Rule 50 computation is necessary for each of the taxable years. Decision will be entered under Rule 50. Footnotes
1. The proper amount to be treated as placed in the reserve account in 1953 is in controversy here. We make no finding with respect to the proper amount to be included in income for that year as it appears that the parties will be able to agree in a Rule 50 computation on the correct figure.↩